IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* BRYAN NELSON and MARY NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>LATTER DAY CHURCH OF CHRIST, *et al.*,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO MAINTAIN SEAL PERMANENTLY<br><br>Case No. 2:21-cv-00129-JNP<br><br>Chief District Judge Jill N. Parrish |

Before this court is relators' motion to permanently seal the complaint and proceedings in this case. Dkt. No. 37. For the following reasons, the motion is DENIED.

## BACKGROUND

Relators Bryan Nelson and Mary Nelson filed this *qui tam* action alleging violations of the False Claims Act, 31 U.S.C. § 3729, *et. seq.* The relators alleged that the defendants, the Latter Day Church of Christ and assorted organizations under its control, violated the False Claims Act by obtaining fraudulent loans through the Paycheck Protection Program. Dkt. No. 1.

As required in *qui tam* actions filed on behalf of the United States, the relators filed their complaint under seal and served the complaint on the government. 31 U.S.C. § 3730(b)(2); *see generally Cook Cnty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 122–23 (2003) (explaining the filing process for False Claims Act actions). Although the initial seal period is fixed by statute at sixty days, "[t]he Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal . . . ." 31 U.S.C. § 3730(b)(3).

Over the next several years, from 2021 to 2026, the United States moved ten times to extend the deadline to notify the court of its election to intervene. *See* Dkt. Nos. 8, 10, 13, 16, 18, 21, 23, 25, 29, 32. All filings in this action have therefore been sealed since the relators filed their original complaint on March 3, 2021. Dkt. No. 1.

On May 4, 2026, the United States notified the court that it was declining to intervene in the action. Dkt. No. 34. The relators then moved to voluntarily dismiss the action, Dkt. No. 36, and the United States consented to dismissal. Dkt. No. 39.

The relators now move to permanently seal the complaint and proceedings in this case. Dkt. No. 37. They argue that public disclosure of these proceedings "would expose Relators to an immediate risk of retaliatory harm by one or more Defendants or their associates." *Id.* at 2. In support of this argument, they allege that their previous whistleblowing activities have resulted in "severe retaliation, including harassment and even threats of physical harm." *Id.* They also point to two lawsuits filed against them by individuals connected to the defendants in this action and harassment following the disclosure of their identity as the whistleblowers in the Washakie fraud case. *Id.* at 2–3. Finally, the relators assert that they have reason to believe they were the target of an "apparent murder plot . . . directed toward eliminating them in retaliation for their efforts to expose fraudulent behavior by members of the Kingston Polygamous Group." *Id.* at 3. A permanent seal, they argue, is the "only narrowly tailored remedy available to prevent the dissemination of information that could lead to retaliatory harassment and intimidation that could significantly compromise Relators' physical safety and wellbeing." *Id.* at 3.

The United States responded to the relators' motion on June 1, 2026. Dkt. No. 38. Its response explains that although the United States ordinarily opposes a permanent seal over a dismissed *qui tam* action, in this case it takes no position as to whether the relators' "fear of a

broader campaign of social and economic harassment" is sufficient to warrant a permanent seal. *Id.* at 3.

## LEGAL STANDARD

In determining whether to grant a motion to seal judicial records, the court must weigh the "presumptively paramount" interests of the public against those interests advanced by the parties. *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011). "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Where a case involves allegations of fraud against the government, the presumptive right of the public to access judicial records is especially strong. *See United States ex rel. Danner v. Quality Health Care, Inc.*, No. 11–4026–CM–KMH–KMH, 2011 WL 4971453, at *2 (D. Kan. Oct. 18, 2011); *Under Seal v. Under Seal*, No. 94-1171, 1994 WL 283977, at *2 (4th Cir. June 27, 1994) ("Courts have also recognized that when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater.").

"The party seeking to overcome the presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption." *Helm*, 656 F.3d at 1292 (citation modified). Yet despite the strength of this presumption of public access to judicial records, it is not absolute. The court has discretion to maintain a permanent seal over proceedings where, for example, "particularized evidence demonstrates that the unsealing of a *qui tam* complaint would threaten a litigant's personal privacy or safety." *United States ex rel. Wenzel v. Pfizer, Inc.*, 881 F. Supp. 2d 217, 221 (D. Mass. 2012).

## DISCUSSION

The court holds that the relators have not carried the "heavy burden" required to maintain a permanent seal over these proceedings. *Sacchi v. IHC Health Servs., Inc.*, 918 F.3d 1155, 1160 (10th Cir. 2019). In weighing the very strong interest of the public in having access to these records against the relators' interests, the court concludes that their motion must be denied.

As an initial matter, the public has a very strong interest in access to the complaint and proceedings in this matter. *See, e.g.*, *United States ex rel. Schweizer v. Oce, N.V.*, 577 F. Supp. 2d 169, 172 (D.D.C. 2008) ("[B]ecause this case involves the [False Claims Act], the taxpaying public are, in effect, the real parties in interest."). The amended complaint alleges a "widespread and well-organized" fraudulent scheme "totaling no less than $5,680,623.00." Dkt. No. 7, at 4–5. Although the government eventually declined to intervene, such allegations continue to be of great interest to the public. Moreover, the relators' having voluntarily dismissed this action does not lessen its import. *See United States ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 67 (D.D.C. 2011) ("Voluntary dismissals of [False Claims Act] actions do not render the allegations any less relevant to the taxpaying public.").

By contrast, the relators have a markedly weaker interest in maintaining a permanent seal over this action. They argue that their previous whistleblowing efforts concerning the Kingston Polygamous Group have resulted in harassment and threats of physical harm. Dkt. No. 37, at 2. The relators also point to text messages from 2016 and 2017 referencing a "potential murder plot" that they "have reason to believe . . . was directed toward eliminating them." *Id.* at 3. These threats of harm and the purported murder plot are further detailed in the relators' appearance on a network television episode of *Whistleblower* and associated media coverage. *See* Jeremy Harris, *Utah Couple Featured on 'Whistleblower' for Role in Case Against Polygamist Clan Business*, KUTV

(May 31, 2019, at 11:13 MT), https://kutv.com/news/local/utah-couple-featured-on-whistleblower-for-role-in-case-against-polygamist-clan-business.

But the relators have pointed only to threats they experienced because of prior whistleblowing activities; they have not provided any evidence that unsealing these proceedings would result in any new or different consequences going forward. The purported murder plot and threats of harm existed well before the relators commenced this action in 2021. Dkt. No. 1. The text messages regarding the alleged murder plot were exchanged in 2016 and 2017, and the other threats occurred sometime before 2019. Dkt. No. 37, at 3. There is no evidence that those threats are in any way connected to this action.

Had the government elected to intervene in this action, the complaint would have automatically been unsealed. And even if the government elected not to intervene, the False Claims Act contemplates that the seal over the complaint and proceedings will ordinarily be lifted anyway. *See United States ex rel. Herrara v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782, 784–85 (E.D. Mich. 2008). The relators thus "knew, or should have known, when [they] filed [their] *qui tam* complaint that most likely [their] identity would eventually be revealed." *Quality Health Care, Inc.*, 2011 WL 4971453, at *2. Having chosen to file this action with the knowledge that they had *previously* faced threats and that their identity would likely be made public, the relators cannot now claim that those pre-complaint threats now make it too risky to expose their identities as the complainants in this action.

The court recognizes that the relators may well have faced genuine hardship because of their whistleblowing activities. At the same time, however, they proceeded to file this case with the knowledge that their identity would most likely become known. The relators' fears do not outweigh the interests of the public in having access to these judicial records.

**CONCLUSION AND ORDER**

For the reasons above, the court DENIES the relators' motion to permanently seal the complaint and proceedings in this case. Dkt. No. 37. All pleadings in this action are unsealed.

DATED October 28, 2026.

BY THE COURT

______________________________
Jill N. Parrish
Chief United States District Court Judge
District of Utah